UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTINE L.,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　　Defendant. | Case No. 2:18-cv-00551-RBL-TLF<br><br>REPORT AND RECOMMENDATION<br><br>**Noted: May 3, 2019** |

Christine L. has brought this matter for judicial review of the Commissioner's denial of her applications for disability insurance benefits and supplemental security income (SSI). This matter has been referred to the undersigned magistrate judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons below, the undersigned recommends that the Court reverse and remand the Commissioner's decision to deny benefits.

Plaintiff applied for disability insurance benefits and SSI in June 2014. Dkt. 8, Administrative Record (AR) 11. She alleges she became disabled beginning June 15, 2010. *Id.* The Commissioner denied the application on initial administrative review and on reconsideration. *Id.*

REPORT AND RECOMMENDATION - 1

Following a hearing, an administrative law judge (ALJ) used the Commissioner's five-step sequential evaluation process to find that plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that she was not disabled at step five of that process. AR 11-28. Plaintiff appeals that decision, seeking reversal and remand for further administrative proceedings.

## I. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless it is: (1) based on legal error; or (2) not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla," though "less than a preponderance" of the evidence. *Id.*; *Trevizo v. Berryhill*, 871 F.3d 664, 674-75 (9th Cir. 2017).

The ALJ is responsible for determining credibility, and for resolving any conflicts or ambiguities in the record. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). If more than one rational interpretation may be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Trevizo*, 871 F.3d at 674-75. Where the evidence is sufficient to support more than one outcome, the Court should uphold the ALJ's decision. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court, however, may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* at 1009. The Court may not affirm the

REPORT AND RECOMMENDATION - 2

decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* at 1010.

## II. ISSUES FOR REVEW

1. Did the ALJ err in evaluating the medical evidence?
2. Did the ALJ err in relying on a vocational expert's testimony that certain jobs can be performed sitting or standing?

## III. DISCUSSION

A.   Medical Opinion Evidence – Examining Psychologist Dr. Cunningham

Plaintiff first contends that the ALJ failed to offer adequate reasons for discounting the opinions of licensed psychologist Margaret Cunningham, Ph.D. The Court should reverse and remand, because Dr. Cunningham's opinions about how plaintiff's mental health conditions limited plaintiff's ability to work were not contradicted by any other mental health professional and there was no clear and convincing reason given by the ALJ's decision to explain rejection of Dr. Cunningham's opinions.

An ALJ must give "clear and convincing" reasons supported by substantial evidence to reject a treating or examining physician's uncontradicted opinion. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Even where contradicted, the ALJ may reject an examining physician's opinion only by providing "specific and legitimate" reasons that are supported by substantial evidence. *Id.* The same applies to the opinion of an examining psychologist. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 & n.7 (9th Cir. 1995) (opinions of "physicians" include those from psychologists and other "acceptable medical sources"[1])).

---

[1] "Acceptable medical sources" include licensed physicians and licensed or certified psychologists. 20 C.F.R. §§ 404.1502(a), 416.902(a); Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *1.

1    The ALJ can meet this requirement by setting out a detailed and thorough summary of
2 the facts and conflicting evidence, stating his or her interpretation thereof, and making findings.
3 *Revels*, 874 F.3d at 654. The ALJ generally must weigh an examining physician's opinion more
4 heavily than a non-examining (reviewing) physician's. *Ghanim v. Colvin*, 763 F.3d 1154, 1160
5 (9th Cir. 2014). The ALJ may reject a physician's opinion if it is "brief, conclusory, and
6 inadequately supported" by objective medical findings or "the record as a whole." *Batson v.*
7 *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).
8    The ALJ need not discuss every item of evidence presented. *Hiller v. Astrue* 687 F.3d
9 1208, 1212 (9th Cir. 2012). But the ALJ "may not reject 'significant probative evidence' without
10 explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995).
11    Here, Dr. Cunningham examined plaintiff in July 2015 and July 2016. AR 482-94, 536-
12 46. In both psychological evaluations, Dr. Cunningham performed a clinical interview and a
13 mental status examination, administered self-inventories for anxiety and depression, and made
14 clinical findings. AR 482, 536.
15    In 2015, Dr. Cunningham found that plaintiff showed severe symptoms of depression,
16 anxiety and panic disorder, and PTSD, along with symptoms of ADHD and borderline
17 personality disorder. AR 485. She opined that plaintiff would have marked limitations in several
18 basic work activities and severe limitations in four areas: communicating and performing in a
19 work setting; maintaining appropriate behavior; completing a work day and work week without
20 interruptions from her symptoms; and setting goals and planning independently. AR 486.
21    In 2016, Dr. Cunningham made similar clinical findings regarding plaintiff's severe
22 symptoms. She opined that plaintiff would be severely limited in one area of work functioning—
23 completing a work day and work week without interruptions from her symptoms—and markedly

1  limited in numerous others. AR 539.

2  The ALJ gave "little weight" to Dr. Cunningham's opinions. AR 24. First, she observed

3  that Dr. Cunningham "examined the claimant on only two isolated occasions." *Id.* Second, she

4  found that Dr. Cunningham's opinions were "overly-restrictive" and "inconsistent with the

5  balance of the evidence detailed above." *Id.* She found that "no other treating or examining

6  source noted deficits anywhere near as extreme as those recorded by Dr. Cunningham" and,

7  instead, plaintiff "was generally noted as behaviorally and cognitively intact." *Id.* And third, the

8  ALJ found that "Dr. Cunningham's assessment is inconsistent with the claimant's own reports

9  that she can follow instructions 'good,' and has no difficulty interacting with authority figures."

10  *Id.* (citing AR 276). The ALJ stated that she gave greater weight to "underlying treatment

11  evidence, and the claimant's own reported abilities and daily activities." *Id.*

12  These were not clear and convincing reasons, nor were the reasons supported by

13  substantial evidence. *See Revels*, 874 F.3d at 654.

14  First, the number of times (two) Dr. Cunningham examined plaintiff could, under some

15  circumstances, be a valid consideration in evaluating Dr. Cunningham's opinion. 20 C.F.R. §§

16  404.1527(c), 416.927(c). Yet this reason standing alone cannot justify rejecting Dr.

17  Cunningham's examining opinion. *See generally Lester v. Chater*, 81 F.3d 821, 832 (9th Cir.

18  1996) (limited observations may be legitimate reason to give limited weight to examining

19  physician's opinion, but only if ALJ does so by comparing examining physician's opinion to

20  assessment by treating physician, not to assessment by doctor who never examined claimant).

21  Second, the ALJ's finding that Dr. Cunningham's opinions were "inconsistent with the

22  balance of the evidence detailed above" is vague and unsupported. Consistency with the medical

23  record is a valid factor in evaluating a medical source's opinion. *See* 20 C.F.R. § 404.1527(c)(4).

24

25

1    But "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing

2    nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis

3    for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

4        Here, the record lacks substantial evidence for the ALJ's findings on the effects of

5    mental-health limitations on plaintiff's ability to work. The ALJ's findings do not accurately

6    reflect the context: While finding that "no other treating or examining source noted deficits

7    anywhere near as extreme as those recorded by Dr. Cunningham," the ALJ disregarded the fact

8    that Dr. Cunningham gave the *only* opinion concerning work-related limitations connected to

9    plaintiff's mental health conditions. Dr. McCollum, who examined plaintiff in March 2014,

10   opined only on whether plaintiff could manage her own financial affairs. AR 368-73. Mental

11   Health Professional Debra Heinzer, who evaluated plaintiff in September 2016, found that

12   plaintiff was suffering from mental illness, the illness required treatment, and plaintiff was at risk

13   that these conditions would deteriorate; but MHP Heinzer did not assess whether the mental-

14   health conditions affected plaintiff's ability to work. AR 548-59. No medical source other than

15   Dr. Cunningham offered an opinion on plaintiff's mental-health-based work limitations. *See* AR

16   23-25. Thus, Dr. Cunningham's opinion was not actually contradicted as to whether plaintiff's

17   mental impairments affected her ability to work.

18       The ALJ's finding that plaintiff "was generally noted as behaviorally and cognitively

19   intact" is not supported by substantial evidence. But as the ALJ acknowledged elsewhere in her

20   decision, AR 20-21, plaintiff's providers noted throughout their treatment notes that plaintiff

21   showed a "rapid speech pattern" and was notably anxious. AR 377, 393, 396, 399, 403, 454, 458,

22   462, 466, 470, 473, 523. The ALJ identifies notes from visits with various medical providers and

23   asserts that they contain normal mental-status findings. *See* Dkt. 14, p. 3. In these notes,

24

25

however, plaintiff was found to show anxiety, depressed mood, rapid speech, memory loss, hallucinations, suicidal ideation, and adaptive-behavior deficits. AR 346, 349, 351, 371-72, 454, 523.

Finding and resolving inconsistencies in the record is the ALJ's responsibility, and the Court is responsible for reviewing the record to determine whether substantial evidence supports those findings. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600, 603 (9th Cir. 1999). An ALJ may not "cherry pick" evidence that disfavors disability without considering its context in the record. *See Ghanim*, 763 F.3d at 1164. Here, the record lacks substantial evidence for the ALJ's conclusion that plaintiff was "generally noted as behaviorally and cognitively intact." *See* AR 24.

Third, the ALJ's finding that Dr. Cunningham's opinions were inconsistent with plaintiff's self-reported limitations is not a clear and convincing reason to reject those opinions. The ALJ pointed to two answers that plaintiff gave on a function report: that she "can follow instructions 'good,' and has no difficulty interacting with authority figures." AR 24, 276-77.

This explanation fails for several reasons. The ALJ did not reconcile her reliance on these notes with Dr. Cunningham's finding that plaintiff shows "little to no insight" as to her conditions. *See* AR 488. Further, Dr. Cunningham was opining on plaintiff's "ability to sustain the activity . . . on an ongoing, appropriate, and independent basis." AR 486. In contrast, plaintiff wrote "Good" in response to the question, "How well do you follow written instructions? (For example, a recipe.)." AR 276. The ALJ could not reasonably use plaintiff's response to a much less specific answer to reject all of Dr. Cunningham's opined limitations.

And even if the ALJ was legally allowed to rely on plaintiff's self-report over Dr. Cunningham's professional opinion, and even if the Court were to overlook plaintiff's observed

REPORT AND RECOMMENDATION - 7

lack of insight, the plaintiff's self-report does not actually contradict any of the limitations the ALJ rejected. The ability to follow simple instructions is one of the few job tasks in which Dr. Cunningham found plaintiff would have only "moderate" limitations. AR 486, 539. The ALJ offers no explanation for how an ability to follow simple instructions is inconsistent with the marked and severe limitations found by Dr. Cunningham. *See id.*; AR 24.

Likewise, the ALJ's decision fails to reconcile reliance on plaintiff's statement that she gets along "fine" with authority figures, with the evidence of plaintiff's lack of insight. AR 24, 277, 488. Plaintiff's statement about getting along fine with authority figures would not, in any event, justify rejecting the numerous limitations that Dr. Cunningham found that do not pertain to plaintiff's relationship with supervisors.

The ALJ thus failed to give clear and convincing reasons, supported by substantial evidence, to reject Dr. Cunningham's opinions. Accordingly, the ALJ also erred in arriving at an RFC based in part on her rejection of Dr. Cunningham's opinions. *See Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012). The Court should reverse and remand with directions to the ALJ to re-evaluate plaintiff's RFC based on the entire record.

B.      Conflict Between Vocational Expert Testimony and DOT

Plaintiff also contends that the ALJ erred in relying on the vocational expert's testimony that she can perform certain jobs. Plaintiff contends that the vocational expert's testimony conflicted with the job definitions in the Dictionary of Occupational Titles (DOT) and the ALJ failed to resolve this conflict.

At step five of the sequential disability evaluation process, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ can do this through testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63

1  (9th Cir. 2000). The ALJ must "[i]dentify and obtain a reasonable explanation for any conflicts

2  between" the expert's testimony and information in the Dictionary of Occupational Titles (DOT)

3  and explain how any conflict was resolved. SSR 00–4p, available at 2000 WL 1898704, at *1.

4      Here, plaintiff and the Commissioner agree that the vocational expert's testimony

5  conflicted with the DOT because: (1) The RFC limited plaintiff to four hours per day standing

6  and/or walking. (2) Work at the "light" exertional level requires "approximately 6 hours" of

7  standing or walking per day, SSR 83-10, at *6. And (3) the vocational expert nonetheless

8  testified that plaintiff can perform jobs at the "light" level of exertion. Dkt. 10, p. 7; Dkt. 14, pp.

9  5-6.

10      The ALJ was thus required to "[i]dentify and obtain a reasonable explanation for" this

11  conflict and explain how it was resolved. *See* SSR 00–4p, at *1; *see Rounds v. Comm'r Soc. Sec.*

12  *Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (holding ALJ erred in failing to recognize "the

13  apparent conflict between [the claimant's] RFC and the demands of Level Two reasoning" as

14  defined in DOT); *Fowler v. Berryhill*, No. 3:16-CV-1520-SI, 2018 WL 566217, at *7 (D. Or.

15  Jan. 26, 2018) (holding ALJ erred in failing to recognize and identify conflict between RFC

16  limiting claimant to quiet environments and telephone solicitor job involving moderate noise).

17      The Court should conclude that the ALJ failed to do so here.

18      After the vocational expert testified that a person with plaintiff's RFC could perform

19  certain jobs at the "light" exertional level, the ALJ asked: "Is there an ability to move from

20  sitting and standing at that job? Can you sit a little bit more than stand or how does that work?"

21  AR 74. The vocational expert responded: "These occupations have the ability to be performed

22  from both the seated and standing positions. However, with the limitation of that, I would

23  estimate 25 percent erosion of these numbers on all three occupations." *Id.* He added that that it

24

25

REPORT AND RECOMMENDATION - 9

1 would be "reasonable" for the person to change position between sitting and standing every 30

2 minutes in those jobs. AR 75.

3     Plaintiff contends that this explanation—that plaintiff would be able to change between

4 sitting and standing in these jobs—did not specifically address the conflict regarding the total

5 amount of time she can sit or stand in a day.

6     Even if the ALJ could reasonably conclude that the vocational expert's testimony

7 addressed that conflict, however, the ALJ erred because she failed to "explain in the

8 determination or decision how he or she resolved the conflict" as SSA regulations require. *See*

9 SSR 00-4p, at \*4; *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).

10     In particular, the vocational expert did not explain the basis of his testimony that a person

11 could perform the "light" jobs seated or standing and change position at will every 30 minutes,

12 AR 74-75. And the ALJ explained only that "[t]o the extent the vocational expert's testimony

13 deviated from or supplemented the information contained in the DOT, he based this testimony on

14 his experience and qualifications detailed at length [in the vocational expert's *curriculum vitae*].

15 I accept this testimony in accordance with SSR 00-4p." AR 27; *see* AR 337-39. This boilerplate

16 reference to the vocational expert's qualifications cannot substitute for an explanation of the

17 specific deviation from the DOT. As in *Tommasetti v. Astrue*, "[t]he ALJ did not identify what

18 aspect of the VE's experience warranted deviation from the DOT, and did not point to any

19 evidence in the record other than the VE's sparse testimony for the deviation." *See* 533 F.3d

20 1035, 1042 (9th Cir. 2008).

21     Thus, if the Court reaches this issue it should find that the ALJ erred in finding plaintiff

22 not disabled at step five based on the vocational expert's testimony. Remand is warranted for this

23 reason, as well.

24

25

## IV. CONCLUSION

For the above reasons, the ALJ improperly determined plaintiff to be not disabled. The Court should therefore REVERSE the Commissioner's decision to deny benefits and REMAND for further administrative proceedings.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **May 3, 2019**, as noted in the caption.

Dated this 16th day of April, 2019.

Theresa L. Fricke
United States Magistrate Judge